[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is essentially an action dated May 15, 1989 to quiet title to land, which was brought to the Superior Court, Judicial District of Danbury, by Robert C. and Sandra McCarthy, on June 12, 1989, and returnable on June 20, 1989. Count two of the plaintiffs' complaint also seeks a Declaratory Judgment, and count three asserts a claim in trespass. All three claims concern a parcel of land described as the southerly one-quarter of Lot 18 (hereinafter "disputed parcel"). The parties' predecessor in title was Daniel M. Yonkers. The plaintiffs acquired their title by a Quit Claim Deed dated March 21, 1983, and recorded in Volume 148, Page 877, of the Brookfield Land Records, known as Lot 18 and one-half of Lot 16 (Plaintiff's Exhibits 4 and 5).
The defendants filed a Revised Counterclaim on September 24, 1990, asserting a claim of ownership to the "disputed parcel" and claiming other relief as appears of record.
The matter was tried to the court on July 9, 1992, and the trial briefs were filed with the court on July 31, 1992 by the defendant, and on August 3, 1992 by the plaintiffs. Thereafter, the parties agreed through counsel to an extension pursuant to C.G.S. 51-183(b). During the course of the trial, the plaintiffs introduced nine exhibits consisting of deeds, maps and miscellaneous documents. The defendant introduced fifteen exhibits which for the most part were deeds and maps. By agreement and at the request of the court, the parties attached photographs of the "disputed parcel" to their trial briefs.
The plaintiffs' property is contiguous to and a neighboring parcel to the property of the defendant on Lakeshore Drive in the Candlewood Shores Section of Brookfield, Connecticut, all in Block "Y", Woodhaven Section. The said Daniel M. Yonkers installed on the southerly quarter of Lot 18 a septic system serving premises on the northerly one-quarter of Lot 22 and Lot CT Page 1547 20. Incidentally, it should be noted that the second named plaintiff did not appear to testify nor offered any evidence concerning her claims. Mr. Robert C. McCarthy testified that he paid some $5,600.00 as the purchase price to the Town of Brookfield, which town obtained title after the foreclosure of certain tax liens against Daniel M. Yonkers. Mr. McCarthy described his property as a sloping hill upon which a two-bedroom raised ranch was to be built and which required installation of a septic system. The land is less than one-quarter of a mile from the lake, has beach rights, and Mr. McCarthy had purchased "quite a few parcels in the 1980's." Within four years after Mr. McCarthy purchases the lot, he claimed to have a buyer for $32,000.00 (Plaintiffs' Exhibit 7), but only if one were able to build upon the lot. The problem was with the size of the lot and the engineered septic system which McCarthy had to revise. McCarthy testified that he never obtained a building permit for the lot.
The only other Witness called by Mr. McCarthy at the trial was Mr. Jay Patrick, Branch Manager of Chicago Title Insurance Company. Mr. Patrick's testimony concluded that the "disputed parcel" was not included in the defendant's chain of title. However, on cross examination Mr. Patrick testified that references were made to Volume 72, Page 445 (Defendant's Exhibit 3) in the defendant's chain of title. Making reference to the merger provisions contained in Defendant's Exhibit 3, Mr. Patrick testified that the merger provision only subjected the property to building restrictions. However, he admitted that his primary concern was with respect to insurability of the title and not marketability of the title, admitting that throughout the chain of title to the defendant, the deeds did in fact contain the exact same language that the conveyance was to include not only Lot 20 and the southerly one-quarter of Lot 22, but also the 15 foot strip which was the southerly one-quarter of Lot 18.
The defendant and other witnesses called by the defendant gave credible testimony that the "disputed parcel" had a deck and plantings and was a cleared flat area with a lawn. Wyckoff worked on the area as did her predecessor in title, Patricia Straus, f.k.a. Brennan. The credible testimony of Howard P. Rubinow III, Engineer, who conducted a site inspection of the Wyckoff premises, described an old septic system of the '60's which would not be permitted by today's health codes. The location of the septic system and leaching fields on the "disputed parcel" is supported by the testimony and map of Mr. CT Page 1548 David L. Ryan, Surveyor, as well as Mr. Rubinow.
The one issue which is dispositive of all claims asserted herein by the parties is whether or not Daniel Yonkers intended to convey the "disputed parcel" by virtue of the warranty deeds to the defendant's predecessors in title. This court finds that Yonkers did so intend to convey the "disputed parcel" based upon the intent of the parties and the extrinsic evidence and circumstances then and thereafter existing. Where there is ambiguity in a deed's description of the land conveyed, courts must attempt to ascertain from parol evidence and from the recorded instruments what it was that the parties intended to convey, Fogg v. Wakelee, 40 Conn. Sup. 272.
In the instant case, Yonkers acquired title to Lot 20 and the northerly quarter of Lot 22 by virtue of warranty deeds (Defendant's Exhibits 1 and 2). He also acquired on June 20, 1960, the "disputed parcel" from the same grantor, just 19 days later (Defendant's Exhibit 3). This deed provided, in essence, that the northerly one-quarter of Lot 22, and Lot 20 together with the "disputed parcel", were to ". . .hereafter for all purposes be considered a single lot, and all side lines, building and other restrictions are hereby amended accordingly."
Almost two and one-half years later, Yonkers acquired on December 26, 1962 the northerly three-quarters of Lot 18 and the southeasterly one-half of Lot 16 (Defendant's Exhibit 4). Said conveyance to Yonkers from the same grantor specifically provided that "The premises hereby conveyed shall hereafter for all purposes be considered as a single lot. . . ."
While the defendant's chain of title has a latent ambiguity with respect to the ownership of the "disputed parcel," the language used in her chain of title must be considered with reference to the situation of the property and the surrounding circumstances to which the parties are presumed to have had reference in order to ascertain the intention of the parties. Russo v. Stepp, 2 Conn. App. 4.
The idea that Yonkers would build a house with its septic system on the "disputed parcel" and thereafter deliberately sever the house on the conveyed premises from the septic fields which served it, is not only inconsistent with a warranty deed conveyance, but also would border on a fraudulent concealment. No doubt Yonkers would be conveying into a law suit. All of the CT Page 1549 warranty deeds from Yonkers to the defendant's predecessors in title, as well as to the defendant, make reference to the instrument which vested Yonkers to the southerly one-quarter of Lot 18, to wit: "The same premises conveyed to Daniel M. Yonkers and Veronica M. Yonkers by warranty deeds dated June 29, 1960 and recorded in Vol. 72, page 445, and July 18, 1960 and recorded in Vol. 62, page 429, of the Land Records of the Town of New Fairfield."
"Where the description of the land which is conveyed by a deed is ambiguous, the court must attempt to ascertain what it was that the parties intended to convey." Faiola v. Faiola,156 Conn. 12 (1968).
While all of the testimony presented at the trial was helpful and important, the credible testimony of the defendant's neighbor and the testimony of Mr. Rubinow was especially important, to wit: The lot has always been steeply sloping except in the terraced area to the north of the house and deck, which is on the "disputed parcel." This is a flat terraced area which has been maintained as such appurtenant to Lot 20 by the defendant and her predecessors in title. And since no excavation or construction had occurred during the approximately 17 years that Ms. Vikaros has resided as a neighboring land owner of the parties, the intent of Yonkers as to his warranty deed conveyance to Riccio-Trimble and ultimately to the defendant, is very clear to the court. The "disputed parcel" was intended to be conveyed by Yonkers within the chain of title to Wyckoff.
Although the court is only ruling on the first count of the defendant's counterclaim in favor of the defendant, it must look to and be swayed by that testimony as well as Mr. Rubinow's conclusion that the septic fields were in fact on the "disputed parcel."
Referring to Bartholomew v. Muzzy, 61 Conn. 387, 393, Luce v. Niantic Menhaden Oil Guano Co., 86 Conn. 147, 149 (1912) and B. T. Harris Corporation v. Bulova, 135 Conn. 356, 360 our Supreme Court wrote in the Faiola v. Faiola, supra, 17, 18 decision, "Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, he so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties CT Page 1550 and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence. . . . But it is not enough that the parties had . . . a particular] intention in fact [that is, as a unanimous state of mind], unless they have expressed it in some way in . . . [the] deed. The question is . . . what is the meaning of what they have said." What is clear to this court is that Mr. Yonkers gave his personal assurance or guaranty of title to the grantee and his heirs and assigns of the estate he conveyed together with the improvements thereon situated, and that the plaintiffs received whatever interest Yonkers may have had left in the property, whatever that interest might be.
Accordingly, judgment shall enter against the plaintiffs on all counts of their complaint and in favor of the defendant on the first count of the defendant's counterclaim.
Eddie Rodriguez, Jr., Judge